UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. _____ |
| Plaintiff, | : | JUDGE Marbley |
| v. | : | INDICTMENT |
| | : | 18 U.S.C. § 1341    2:21-cr-175 |
| MARK ALAN THOMAS, | : | |
| Defendant. | : | FORFEITURE |

**THE GRAND JURY CHARGES:**

## INTRODUCTION

At times relevant to this Indictment:

1. The defendant, **MARK ALAN THOMAS**, resided in the Southern District of Ohio.

2. **THOMAS** was an active Ohio-licensed attorney until on or around October 27, 2015, when his Ohio law license was suspended.

3. On or around January 23, 2012, **THOMAS** obtained a Power of Attorney for A.L., a woman then eighty-five years old who soon after began to exhibit symptoms indicative of dementia and moved into a senior-care facility. The Power of Attorney gave **THOMAS** broad powers to act on A.L.'s behalf, including to manage her money and other property.

## THOMAS'S SCHEME TO DEFRAUD

4. From in or around January 2012, to in or around August 2019, the defendant, **MARK ALAN THOMAS**, devised and intended to devise a scheme to defraud A.L. and obtain her money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions—that is, while pretending to act on A.L.'s behalf through a

Power of Attorney, **THOMAS** took A.L.'s money and used it for his own purposes, without A.L.'s permission or knowledge.

## MANNER AND MEANS

It was part of the scheme that:

5. On or around May 24, 2012, when a family member of A.L. obtained a Power of Attorney for A.L. and notified **THOMAS** of this fact, he told the family member that A.L. could have only one Power of Attorney at a time. **THOMAS** then drafted a revocation of the family member's Power of Attorney for A.L. to sign, and on or around July 27, 2012, he acted as the notary to verify A.L.'s signature on the revocation. This revocation left **THOMAS** as the sole person authorized to review and manage A.L.'s assets on her behalf.

6. Over the course of several years, from in or around 2012 through in or around 2018, **THOMAS** improperly used the apparent authority granted to him by A.L.'s Power of Attorney to convince various entities—including banks and life-insurance companies—to transfer A.L.'s money so that he could use it for his own personal expenses without her consent.

7. Even after his Ohio law license was suspended, **THOMAS** continued to use the trust placed in him as an attorney to convince various entities—including banks and life-insurance companies—to transfer A.L.'s money so that he could use it for his own personal expenses without her consent.

8. To hide the fact that he was abusing the Power of Attorney by using it for his own benefit, **THOMAS** frequently made false representations about his reasons for transferring A.L.'s funds. For example, to convince a banker on one occasion that his self-serving withdrawal of A.L.'s money was legitimate, **THOMAS** falsely claimed that he needed $200,000 to set up an educational trust that A.L. wanted to establish. Once he received the money from the bank,

**THOMAS** did not create the alleged educational trust. Instead, he transferred the bulk of the funds to himself.

9. On or about January 28, 2014, **THOMAS** cashed over $290,000 in U.S. Treasury Bonds in A.L.'s name, then subsequently transferred $200,000 into his law firm's bank account and from there into his personal bank account. When later asked by law-enforcement officials why he cashed the bonds, **THOMAS** falsely stated that most of the bonds were no longer earning interest for A.L. At the time he cashed the bonds, however, the vast majority were still earning interest.

10. In or around 2016, **THOMAS**, posing as A.L., wrote letters from A.L. to approximately three life-insurance companies asking each company to cash out her life-insurance policy and direct all correspondence to **THOMAS**, the holder of her Power of Attorney.

11. **THOMAS** sometimes paid his own personal expenses with checks drawn on A.L.'s bank accounts.

12. To make his scheme more difficult to detect and trace, **THOMAS** frequently transferred A.L.'s funds into his law firm's bank account for holding client funds in trust. **THOMAS** then used the proceeds in the trust account to pay directly for his personal expenses, or he transferred the proceeds on to a personal bank account.

13. In total, **THOMAS** stole more than $500,000 of A.L.'s funds while purporting to act in her best interests through her Power of Attorney.

## COUNTS 1–4
### (Mail Fraud)

14. Paragraphs 1 through 13 are incorporated here.

15. On or about each of the dates set forth below, in the Southern District of Ohio, the defendant, **MARK ALAN THOMAS**, for the purpose of executing the scheme described above,

3

and attempting to do so, knowingly caused to be delivered by the U.S. Postal Service and commercial interstate carriers according to the direction thereon the mailings described below, each mailing constituting a separate count:

| COUNT | APPROXIMATE DATE | TRANSACTION |
|---|---|---|
| 1 | 12/29/2016 | Check for $99,000 sent by mail from Wells Fargo investment account to A.L. |
| 2 | 3/30/2017 | Check for $28,000 sent by mail from Wells Fargo investment account to A.L. |
| 3 | 5/3/2017 | Check for $149,295.31 sent by mail from Wells Fargo investment account to A.L. |
| 4 | 7/5/2017 | Check for $221,000 sent by mail from Wells Fargo investment account to A.L. |

**All in violation of Title 18, United States Code, Sections 1341.**

**FORFEITURE ALLEGATION A**

16. The allegations contained in this Indictment are incorporated here for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(2)(A).

17. Upon conviction of any of the offenses alleged in Counts 1 through 4 in violation of Title 18, United States Code, Sections 1341 (Mail Fraud), **THOMAS** shall forfeit to the United States, in accordance with Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s), including, but not limited to, a sum of money equal to the amount of proceeds **THOMAS** obtained as a result of such offenses.

18. If any of the above-described forfeitable property, as a result of any act or omission of **THOMAS**:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 982(a)(2)(A), 28 U.S.C. § 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

A TRUE BILL.

s/Foreperson
**FOREPERSON**

**VIPAL J. PATEL**
**Acting United States Attorney**

_____
**S. COURTER SHIMEALL (0090514)**

_____
**DAVID J. TWOMBLY (0092558)**
**Assistant United States Attorneys**